GREGER *v.* THE STATE OF OHIO.

(Decided April 15, 1927.)

*Messrs. Davis & Ely* and *Messrs Nichols, Speidel & Nichols,* for plaintiff in error.

*Mr. Carl Z. Garland* and *Mr. Harry Britton,* for defendant in error.

BY THE COURT. Robert Greger, the plaintiff in error here, was indicted at the April term of the court of common pleas of Clermont county, Ohio, for the crime of murder in the first degree. He was tried to a jury, and convicted of manslaughter. Motion for a new trial was overruled, and Greger was sentenced to the penitentiary.

Four specifications of error are presented:

1. That the verdict of the jury is manifestly against the weight of the evidence, and contrary to law.

2. That the court erred in refusing to give special charges Nos. 8, 10, and 15, requested by defendant below.

3. Error in the general charge.

4. Error in the rejection of evidence, offered on behalf of the defendant below.

The indictment and conviction were for the killing of Ed. Wood. The assignments of error will be considered in the order in which they appear above.

Wood, the deceased, was a man about 52 years of age, weighing about 160 pounds. His son, Fred Wood, the prosecuting witness, was a young man 27 years of age, and weighed about 147 pounds. Both were in good health and active.

The defendant, Robert Greger, was a man about 44 years of age, and prior to the events here narrated had been in poor health. He resided all his life with his father and mother on a farm, adjoining the farm of Ed. Wood, the decedent. Henry Greger, the father of the defendant, Robert Greger, in whose

defense the defendant killed Ed. Wood, was a small man past 70 years of age.

It appears that there was bad feeling between the two families, growing out of the question of the trespassing of stock, and perhaps from some other disagreements. It appears that a practically abandoned public road ran along and near the division line, along a creek, and at the place in question was all located on the Greger land. The defendant, Robert Greger, had purchased a revolver through a mail order house, and frequently carried the revolver when on his farm.

On the day of the killing, the defendant Greger and his father had gone to their tobacco barn, near the place described, to strip tobacco. The father, hearing a noise down along the creek, on this abandoned public highway, went out to investigate, without saying anything about where he was going. He went down to the creek and saw the decedent and his son. The father of defendant says that Fred. Wood, the prosecuting witness, was tearing stone from the bank of the creek, and that the decedent Ed. Wood, was doing something with an ax. The prosecuting witness says he was fixing the road. In any event, the elder Greger went down and across the creek to where the prosecuting witness and his father were. An altercation arose. The prosecuting witness claims that the elder Greger struck his father. The elder Greger contends that the first blow was struck by the prosecuting witness, with a stalk or corn knife.

Shortly after the elder Greger left the tobacco barn, the defendant, his son, came out, and, not seeing his father, went back and closed the barn door.

He spoke to a lady in a passing vehicle, and, hearing a noise, stated to the lady that he guessed there was trouble. He went down to the creek, in which the water was somewhat deep. He states that while going down he saw the prosecuting witness, the younger Wood, waving the corn knife around his father's head, and then saw him strike his father over the head with the corn knife, felling him to the ground; that his father got up and was again stricken to the ground with the corn knife, and upon arising was stricken down a third time; that he got in the creek going toward the scene of the conflict, and saw his father on the ground, and, as he testifies, saw the decedent, Ed. Wood, the father of the prosecuting witness, striking his father with an ax, and he thereupon began shooting at the Woods; that thereupon the prosecuting witness, the younger Wood, climbed in the wagon and started to drive away, the deceased, Ed. Wood, walking along behind the wagon. Wood went some distance around a curve and fell dead, having been shot through the chest.

The defendant, Robert Greger, helped his father up, carried him across the creek, assisted him up the road, and stopped at a neighbor's house where he telephoned for a doctor. The father was then assisted to his house, and put to bed. The doctor arrived and treated the elder Greger, found that the corn knife had cut through a heavy straw hat, and had cut through the scalp; that the bridge of his nose was badly cut; that he had a cut on his elbow and on his finger; and that there was a wound on his back, caused by a blow with some blunt instru-

ment, which had broken the rib over the kidney loose from the back bone.

The prosecuting witness, Fred. Wood, claims that the elder Greger struck his father first, as above stated, thus beginning the affray; that he thereupon did strike the elder Greger with the corn knife three times, knocking him down; that the elder Greger struck him with a stone, and they rolled on the ground. He claims that the elder Greger was on top of him, and that the decedent must have struck the elder Greger with something on the back, because Greger thereupon released him. But he does not know with what the decedent struck Greger.

From the record there is no question that the defendant knew nothing as to how the affray started, or who was the aggressor. The first thing he saw was the waving of the corn knife around the head of his father, and saw his father stricken down with it. And he says that while his father was on the ground, the decedent struck his father with the ax. He was not near enough at hand to render assistance.

It would seem from these facts that the defendant might fairly and reasonably suppose that his father was not only in danger of great bodily harm, but in danger of his life. He had no part in the beginning of the affray, and there is no evidence whatever that he had any knowledge of the circumstances prior to the time that he saw the younger Wood striking his father with the corn knife. These are the salient facts, and we are of opinion that there was reasonable doubt of the guilt of the defendant. It manifestly appears so from the evidence.

The jury may have been influenced in its verdict

by evidence admitted to the effect that the defendant, Robert Greger, had previously made threats against the Woods, and carried a revolver, and by the further fact that Greger expressed no regret after the killing except to say with an oath that he was sorry it had not been the younger Wood instead of the old man. But the threats preceding the affray, and statements subsequent thereto, cannot change the facts occurring at the time. If we consider alone the admissions of the prosecuting witness that he struck the elder Greger down three times with the corn knife, and that his father struck him on the back with something, which all took place in the view of the defendant, the son, we still think there was reasonable doubt of the guilt of the defendant.

With reference to the second specification of error, the refusal of the court to give special charges Nos. 8, 10, and 15, it is sufficient to say that the court was not bound to give the charges before argument; that if the general charge contained the law there could be no error predicated on the refusal to give these special charges.

We have examined with care the general charge of the court. It is the law that parent and child, husband and wife, master and servant, will be excused should they even kill an assailant in the necessary defense of each other. Under the rule, the trial court clearly and carefully gave to the jury the law applicable to the case.

We find no error in the refusal to give the special charges; nor do we find error in the general charge.

The specification of error with reference to the rejection of evidence concerned evidence as to the

length of time the elder Greger was under treatment for his injuries, and the length of time he was confined to his bed. This evidence was competent as tending to corroborate the defendant as to the viciousness of the attack made upon his father by the prosecuting witness and the decedent, and would bear upon the question as to whether or not the defendant was justified in resorting to the shooting in defense of his father.

The other evidence rejected was an answer to the following question:

"Q. From the impression you found on the back, that you have described, I'll ask you to state what kind of an implement, in your opinion, it was caused by."

The answer to this question was properly excluded, for the reason that it calls simply for an opinion. The doctor could, as he did, describe the impressions and the injuries found upon the back, their character and their shape. It was then for the jury to determine the kind of an instrument used, causing the injury. Or, in other words, the jury might infer from the description of the injury, and the impression found on the back, that it was caused by an ax, which would corroborate the defendant's claim that the decedent struck the elder Greger on the back with an ax. This evidence was properly rejected.

For the reason that the immediate circumstances surrounding the affray, whether viewed from the evidence of the state, or from the evidence of the defendant, in the opinion of this court raise a reasonable doubt as to the guilt of the defendant, the judgment of conviction will be set aside and held for

naught, and the cause will be remanded to the court of common pleas of Clermont county, Ohio, for a new trial, and for further proceedings according to law.

*Judgment reversed and cause remanded.*

HAMILTON, P. J., CUSHING and BUCHWALTER, JJ., concur.